UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ALICIA BELLAFAIRE, JOSHUA CLARK, JENNIFER FLAMMGER, ANDREW HEIM, JOHN KEHOE, DOUGLAS KRULL, JENNIFER PAGE, CYNTHIA PENMAN, WILLIAM PENMAN, JODEE RIORDAN, JAMES STUERMER, SALVATORE ALESSANDRA, individually and on behalf of A.A., S.A. and I.A., JONATHAN BENCIC, JILLIAN BENCIC, JOHN CORRIGAN, JOAN CORRIGAN, DREW DIONNE, individually and on behalf of H.D. (I) and H.D. (II), KYLE FAULKNER, NICOLE FAULKNER, CHARLES FREEBURG AND VALERIE FREEBURG, individually and on behalf of E.F. and C.F., LAURIE GRADY, ROGER GRADY, NICHOLAS IACONA, DARLEEN IACONA, PINO IACONA, ROBERT JACHIMIAK, SARA JACHIMIAK, EARLINE JAMES, STEVEN JAMES, ROBIN JAMES, DONNA JOHNSON, DOROTHY KOEPSELL, JAMES KOEPSELL, JASON KOEPSELL, DEBORAH KRAMER, STEVEN KROLCZYK, MICHAEL LABUSHESKY, HELEN LABUSHESKY, individually and as administrator of the estate of James Labushesky, ANN MCCLAIN, ANDREW MCCLAIN, SCOTT MCELDOWNEY, LEAANN MCELDOWNEY-HOWARTH, JANE NEUMANN, DEANNA PATTERSON, MATTHEW PATTERSON, PAUL RADOS, RUTH RADOS, PAMELA RADOS-HALL, SHAWN RANCE, MARK REIST, KAYLA REIST, ERIC REIST, MARY RICHARDS, HARRY RICHARDS, JR., AMANDA ROESER, THOMAS SKUPIEN, EDWARD STAPLETON, ROSANNE STAPLETON, CRAIG STONEBRAKER, WINONA STONEBRAKER, JAMES STONEBRAKER, JOURDAN SUTTON, SHERRY WARNER, GAIL WARNER AKA GAIL WILDT, ZACHARY WARNER, ERICA WIRTH, THEODORE WIRTH, DONNA WIRTH, ROBERT ZALEWSKI AND CHRIS ELLEN ZALEWSKI, individually and on behalf of K.Z., JOSHUA DOROSHENKO, individually and on behalf of C.D. (I), C.D. (II), C.D. (III), NICOLE DOROSHENKO, EDWARD GUIDO, JENNIFER GUIDO

No.:

COMPLAINT

                                        *Plaintiffs,*

*-against -*

TOWN OF WHEATFIELD, a municipality located in Niagara County, New York, Individually and as Successor in Interest to NIAGARA SANITATION COMPANY;

OCCIDENTAL CHEMICAL CORPORATION, Individually and as Successor in Interest to HOOKER CHEMICAL AND PLASTICS CORPORATION; BELL HELICOPTER TEXTRON, INC. individually and as Successor in Interest to BELL AIRCRAFT CORPORATION; CROWN BEVERAGE PACKAGING, LLC individually and as Successor in Interest to CONTINENTAL CAN; GREIF, INC. individually and as Successor in Interest to GREIF BROS. COOPERAGE CORPORATION; REPUBLIC SERVICES, INC. individually and as Successor in Interest to NIAGARA SANITATION COMPANY, INC.; HONEYWELL INTERNATIONAL INC. individually and as Successor in Interest to BELL AEROSPACE; PYROTEK INCORPORATED individually and as Successor in Interest to the CARBORUNDUM COMPANY,

*Defendants.*

-----------------------------------------------------------------------X

# **COMPLAINT[1]**

Plaintiffs, Alicia Bellafaire, Joshua Clark, Jennifer Flammger, Andrew Heim, John Kehoe, Douglas Krull, Jennifer Page, Cynthia Penman, William Penman, Jodee Riordan, James Stuermer, Salvatore Alessandra, individually and on behalf of A.A., S.A. and I.A., Johnathan Bencic, Jillian Bencic, John Corrigan, Joan Corrigan, Drew Dionne, individually and on behalf of H.D. (I) and H.D. (II), Kyle Faulkner, Nicole Faulkner, Charles Freeburg and Valerie Freeburg, individually and on behalf of E.F. and C.F., Laurie Grady, Roger Grady, Nicholas Iacona, Darleen Iacona, Pino Iacona, Robert Jachimiak, Sara Jachimiak, Earline James, Steven James, Robin James, Donna Johnson, Dorothy Koepsell, James Koepsell, Jason Koepsell, Deborah Kramer, Steven Krolczyk, Michael Labushesky, Helen

---

[1] Pursuant to Local Rule 5.1, Counsel notifies this Court that this case is related to ***Elizabeth Andres, et al. v. Town of Wheatfield, et al.*** That matter was originally filed in the Supreme Court for the State of New York, Niagara County on March 26, 2017. It was removed to Federal Court on May 3, 2017, and is captioned ***Elizabeth Andres, et al. v. Town of Wheatfield, et al.,*** USDC, Western District of NY, Docket No.: 1:17-cv-00377-CCR. That matter is currently pending before the Honorable Judge Christina Reiss. Plaintiffs in both actions intend to seek consolidation of these related matters to avoid unnecessary duplication of judicial effort and resources.

Labushesky, individually and as administrator of the estate of James Labushesky, Ann McClain, Andrew McClain, Scott McEldowney, LeaAnn McEldowney-Howarth, Jane Neumann, Deanna Patterson, Matthew Patterson, Paul Rados, Ruth Rados, Pamela Rados-Hall, Shawn Rance, Mark Reist, Kayla Reist, Eric Reist, Mary Richards, Harry Richards, Jr., Amanda Roeser, Thomas Skupien, Edward Stapleton, Rosanne Stapleton, Craig Stonebraker, Winona Stonebraker, James Stonebraker, Jourdan Sutton, Sherry Warner, Gail Warner aka Gail Wildt, Zachary Warner, Erica Wirth, Theodore Wirth, Donna Wirth, Robert Zalewski and Chris Ellen Zalewski, individually and on behalf of K.Z., Joshua Doroshenko, individually and on behalf of C.D. (I), C.D. (II), C.D. (III), Nicole Doroshenko, Edward Guido, Jennifer Guido, by and through their attorneys, NAPOLI SHKOLNIK PLLC, STAG LIUZZA, L.L.C. and Christen Civiletto Esq., for their first amended complaint against Defendants the TOWN OF WHEATFIELD individually and as Successor in Interest to NIAGARA SANITATION COMPANY, OCCIDENTAL CHEMICAL CORPORATION, Individually and as Successor in Interest to HOOKER CHEMICAL AND PLASTICS CORPORATION, BELL HELICOPTER TEXTRON, INC. individually and as Successor in Interest to BELL AIRCRAFT CORPORATION, CROWN BEVERAGE PACKAGING, LLC individually and as Successor in Interest to CONTINENTAL CAN, AND GREIF, INC. individually and as Successor in Interest to GREIF BROS. COOPERAGE CORPORATION, REPUBLIC SERVICES, INC. individually and as Successor in Interest to NIAGARA SANITATION COMPANY, INC., HONEYWELL INTERNATIONAL INC. individually and as Successor in Interest to BELL AEROSPACE, and PYROTEK INCORPORATED individually and as Successor in Interest to the CARBORUNDUM COMPANY ("Defendants"), state and allege the following upon information and belief, except as to the allegations, which pertain to the Plaintiffs which are alleged upon personal knowledge.

Plaintiffs' information and belief are based upon; *inter alia*, the investigation made by and through their attorneys. Plaintiffs, by and through their attorneys as and for their first amended complaint, hereby state and allege:

## NATURE OF ACTION

1.      This Complaint states claims pursuant to 42 U.S.C. § 1983; the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq.; and state law for negligence strict liability, nuisance, trespass, property damage, response costs, declaratory relief, and is seeking medical monitoring, damages in excess of the jurisdictional minimum, as well as punitive damages, exclusive of interest, costs, and attorneys' fees.

2.      Defendant, TOWN OF WHEATFIELD, individually and as Successor in Interest to NIAGARA SANTITATION COMPANY ("WHEATFIELD"), is a municipality subject to the authority of New York statutes, located in Niagara County, in the State of New York.

3.      Defendant, OCCIDENTAL CHEMICAL CORPORATION, individually and as Successor in Interest to HOOKER CHEMICAL AND PLASTICS CORPORATION ("OCCIDENTIAL/HOOKER"), is headquartered at 5005 LBJ Freeway, Dallas, Texas 75244-9050. The OCCIDENAL CHEMICAL CORPORATION plant that produced Love Canal waste that was dumped at the Nash Road Landfill is located at 4700 Buffalo Ave, Niagara Falls, New York 14304.

4.      Defendant, BELL HELICOPTER TEXTRON, INC. individually and as Successor in Interest to BELL AIRCRAFT CORPORATION ("BELL"), is headquartered at 3255 Bell Helicopter Boulevard Fort Worth, Texas, 76118. BELL was founded in 1935 in Buffalo, New York. At all times material to the allegations herein Bell was doing business in the State of New York.

4

5.     CROWN BEVERAGE PACKAGING, LLC individually and as Successor in Interest to CONTINENTAL CAN ("CONTINENTAL"), is headquartered at 1 Crown Way, Philadelphia, Pennsylvania, 19154-4599.  CONTINENTAL CAN was incorporated in New York in 1913.  At all times material to the allegations herein, CONTINENTAL CAN was doing business in the State of New York.

6.     GREIF, INC individually and as Successor in Interest to GREIF BROS. COOPERAGE CORPORATION ("GREIF"), is headquartered at 425 Winter Road, Delaware, Ohio, 43015.  GREIF BROS. COOPERAGE CORPORATION had a plant in Niagara Falls, Canada. At all times material to the allegations herein, GREIF BROS. COOPERAGE CORPORATION was doing business in the State of New York.

7.     REPUBLIC SERVICES, INC. individually and as Successor in Interest to NIAGARA SANITATION COMPANY, INC.; is headquartered at 18500 North Allied Way, Phoenix, Arizona, 85054.  REPUBLIC SERVICES, INC. is a foreign business corporation registered to do business in New York. At all times material to the allegations herein, NIAGARA SANTITATION COMPANY, INC. was doing business in the State of New York.

8.     HONEYWELL INTERNATIONAL INC. individually and as Successor in Interest to BELL AIRCRAFT CORPORATION; is headquartered at 115 Tabor Road, Morris Plains, New Jersey 07960.  HONEYWELL INTERNATIONAL INC. is a foreign business corporation registered to do business in New York. At all times material to the allegations herein BELL was doing business in the State of New York.

9.     PYROTEK INCORPORATED individually and as Successor in Interest to the CARBORUNDUM COMPANY, is headquarters at 705 West 1st Avenue, Spokane, Washington 99201.  PYROTEK INCORPORATED is a foreign business corporation registered to do

business in New York. At all times material to the allegations herein Carborundum Company was doing business in the State of New York.

10.     The Plaintiffs have complied with all conditions precedent prior to bringing an action against a government entity by submitting Notice of Claims pursuant to New York General Municipal Law § 50-e and §50-h.

11.     Plaintiffs have properly served the Town of Wheatfield in compliance with New York General Municipal Law § 50-e and §50-h on or before February 27, 2017.  All Plaintiffs have:  i) filed their initial state complaint in this action thirty (30) days after filing their Notice of Claim and before a demand for hearing was served; or ii) were served a demand for hearing to be held June 5, 2017, which hearings were adjourned by defendant Town *sine die* for all claimants and ninety (90) days have elapsed without a subsequent demand for hearing.

## JURISDICTION

15.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. §1343(a)(3) and (4), which authorizes federal courts to hear civil rights cases; and 28 U.S.C. § 2201, the Declaratory Judgment Act and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

16.     This Court has jurisdiction over the subject matter of the Counts I, II, and III pursuant to § 113(b) of CERCLA, 42 U.S.C. § 9613(b); the Declaratory Judgment Act, 28 U.S.C. § 2201; and federal question jurisdiction, 28 U.S.C. § 1331.

17.     This Court has jurisdiction over the subject matter of the Counts IV and V pursuant to 42 U.S.C. § 1983; the Declaratory Judgment Act, 28 U.S.C. § 2201; and federal question jurisdiction, 28 U.S.C. § 1331.

18.     This Court has supplemental jurisdiction over Counts V, VI, VII, VIII and IX under 28 U.S.C. § 1367 because the state law negligence, strict liability, nuisance and trespass

6

claims are so related to the federal claims in this action that they form the same case and controversy under Article III of the United States Constitution.

19.     This Court has personal jurisdiction over the Defendants as each of them, for the events and happenings referred to herein, were doing business in New York and/or owned property in New York, or had its chemical waste transported to the Nash Road Landfill, such that it is reasonably foreseeable that they would be subject to the jurisdiction of the courts of this state.

## VENUE

20.     This case is properly venued in this Court because the actions of the Defendants or their predecessors, and the injuries and damages alleged herein all occurred in the County of Niagara, New York.

21.     Venue is proper in the Western District of New York pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C § 1391(b) because the actual and threatened endangerments, releases, injuries, and damages at issue are taking place and have taken place in this district.

## FACTUAL ALLEGATIONS AS TO ALL COUNTS

22.     This is an action brought by and on behalf of Plaintiffs arising out of the prior and continuing release, discharge, and deposit of toxic and hazardous substances and contaminants onto Plaintiffs' properties and persons, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and polychlorinated biphenyls (PCBs).

23.     At the time of exposure and resulting injuries complained of herein, Plaintiffs have been either the current or previous owners and/or occupants of certain real property,

consisting of various lands and various types of residences located in Niagara County, New York that are located near the real property and facilities of approximately twenty-five (25) acres on 7415 Nash Road Wheatfield, NY, situated immediately north of the City of North Tonawanda city limits and east of Nash Road; it was known as the Nash Road Landfill ("the Site").

24.    The Site was operated by the Niagara Sanitation Company between 1964 and 1968 for disposal of municipal and industrial wastes.  It was and is currently owned by the Town of Wheatfield.    After a rainfall, the Site accumulates water that flows onto adjacent private property and into the sewer system.

25.    The Site is a closed, unlined, uncapped landfill that had been used by the Niagara Falls Air Force Base, Bell Aerospace, Carborundum Corporation, Frontier Chemical, Continental Can, and Greif Brothers, as well as local municipalities to dispose of municipal, industrial and hazardous waste including metals, polycyclic aromatic hydrocarbons, polychlorinated biphenyls, pesticides, caustics, and plating tank sludge.

26.    In 1968 approximately 1,600 cubic yards of Love Canal waste, material from Hooker Chemical and Plastics Corporation that was excavated from the Love Canal Landfill (later a Superfund Site), was dumped at the Site.  Shortly thereafter waste disposal activities at the Site ended and the nature of the hazardous waste within was not disclosed to the surrounding neighbors.

27.    The Site, which in appearance is a normal area of woods or forest, is located directly adjacent to homes.  The Site is unimproved and apparently unused and, during all times relevant to this action, contained no fence or signage limiting access.

28.    The Site was used recreationally by area residents – including Plaintiffs – for decades.  Activities undertaken by near-by residents and Plaintiffs include, but are not limited to,

walking, bike riding, riding of all-terrain vehicles, motorized dirt bikes, fishing, hunting, trapping and dog-walking.

29.     The use of bikes and motorized vehicles created airborne migration material from the Site during dry conditions.  During wet conditions or when there was standing water at the Site, material was carried off-site as "mud" on shoes, vehicles and pets.

30.     In 1981 the Niagara County Department of Health conducted an investigation and concluded that "[t]he potential for migration of chemicals off-site is present." Noting the proximity of the homes on Forbes Road, the Department of Health recommended that the town of Wheatfield conduct an abatement and required that the landfill be properly closed.  This was not done.

31.     A 1988 EPA Site Inspection Report stated that hazardous waste excavated from the Love Canal Landfill was disposed of at the Site in a trench of soft, layered clay and that no engineered barriers were installed.   The excavated materials were placed into a trench at the northeast end of the Site that was excavated into underlying clay and then covered with soil. Water samples taken at the Site revealed benzene at 4500 mg/L, chlorobenze at 590 mg/L, toluene at 14,000 mg/L, and acetone at 2,300 mg/L.  Samples of Lead in the landfill ranged from 67 to 20,000 ppb.

32.     The 1988 EPA Site Inspection Report indicated that the Site was flat and drainage was poor, and prior to the dumping, the Site was a swamp.  It also indicated that 1) groundwater was contaminated and that the population would be potentially affected; 2) that surface water and soils were "rusty" in appearance and methylene chloride, total organic halogens and toluene were detected, and 3) that soil samples contained metal and organic contamination; 4) that it had been observed that the Site was used by local residents as a play area and that some local residents

were believed to draw water from the contaminated aquifer; and 5) that pools of orange tinted standing water were observed and rubbish was protruding out of the ground.

33.     A Phase II Investigation was performed in 1989 for the Division of Hazardous Waste Remediation at the New York State Department of Environmental Conservation ("DEC"). Its recommendations indicated that the shallow groundwater at the site contained significant contamination of toxic organic compounds and metals and that there was a potential for the contaminants to migrate off the site.  It stated that additional work should be performed to determine the potential for off-site migration and whether or not it was presently occurring, including a soil vapor survey and off-site wells, and that the Site should be capped and a fence constructed to limit public access to the site.   Work conducted to the date of the report had not included a determination of whether the disposal trenches dug for the Love Canal waste had breached the clay layer exposing the regional aquifer underneath the Site; therefore the Report recommended an investigation to make this determination.

34.     Despite the above delineated reporting, no action was taken and none of the recommendations were performed.  The Site remained just as it was. The adjacent community was not informed of any findings, directives or reporting. Thus the community was not warned of the danger to persons and property, and therefore continued to use the unfenced Site for recreational activities.

35.     On December 21, 2015 the New York Department of Environmental Conservation ("DEC") issued a Public Notice pursuant to the State Superfund Program: "Inactive Hazardous Waste Disposal Site Classification Notice", which stated in part:

> As of the date of this notice, the site identified above, and located on a map on the reverse side of this page, was reclassified on the Registry as a Class 2 site that presents a significant threat to public health and/or the environment for the following reason(s): The site is a former municipal and industrial landfill that accepted waste

from multiple sites, including Niagara Falls Air Force Base, Bell Aerospace, Carborundum, Frontier Chemical, Graphite Specialties, Continental Can, and Grief Brothers. Site contaminants include metals, polycyclic aromatic hydrocarbons, polychlorinated biphenyls, pesticides, caustics, and plating tank sludge. The landfill does not have a Part 360 cap or access restrictions. Both conditions indicate a concern for potential exposures to people who enter the site. This exposure concern has been documented as people are using the landfill as a jogging and play area. Dirt bike trails are evident throughout the site and use of such has resulted in landfill materials to become exposed at the surface. Therefore, the site represents a significant threat to the environment and public health. If you own property adjacent to this site and are renting or leasing your property to someone else, please share this information with them.

36.     Defendant Town of Wheatfield was fully aware that the Site contained an unknown quantity of toxic chemicals, toxic contaminants and waste, industrial solvents and sludge, and banned pesticides, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs.  Despite having knowledge of the hazardous nature of the chemicals at the Site, and despite being directed by environmental and health authorities to address site access and exposure, Defendant Town of Wheatfield left the Site abandoned for decades, without proper cleanup, oversight, or management, with no signage as to the danger, no fencing of the property to prevent access, and without engineering controls to prevent seepage and transport of contamination on to the surrounding properties.

**The Contaminants**

37.     Aldrin is an extremely hazardous (pursuant to 42 U.S.C. 11002) organochlorine insecticide that was derived from hexachlorocyclopentadiene, a persistent organic pollutant.  It was banned in the 1970s.

38.     Arsenic is identified by the World Health Organization (WHO), the Department of Health and Human Services (DHHS), and Environmental Protection Agency (EPA) as a human carcinogen.   Exposure to even low levels of Arsenic is known to lead to adverse human health effects.    Arsenic increases the risk of lung, skin, bladder, liver, kidney and prostate cancers.

39.     Barium is a metal that can be found in the environment. Small amounts of water-soluble barium may cause breathing difficulties, increased blood pressure, heart rhythm changes, stomach irritation, muscle weakness, changes in nerve reflexes, swelling of brains and liver, kidney and heart damage.

40.     Benzo-trichlorides are classified as extremely hazardous substances (pursuant to 42 U.S.C. 11002) and have been classified as a Group B2, probable human carcinogen. The substance may have effects on the lungs, liver, kidneys and thyroid.

41.     Cadmium is a known human carcinogen. It is an extremely toxic metal commonly used in electroplating.  Cadmium exposure may also affect lungs and kidneys, resulting in kidney impairment.

42.     Caustics are chemicals that are capable of burning or corroding by chemical action.

43.     Chlorobenzenes are irritating to the eyes and the skin and may cause central nervous system effects. Animal reproduction studies on Chlorobenzene have shown an adverse effect on the fetus.

44.     Chlordane is an extremely hazardous substance (pursuant to 42 U.S.C. § 11002) and has been classified as a Group B2, probable human carcinogen. It was used as a pesticide in the United States from 1948 until it was banned in 1988.   Chlordane exposure is a risk factor for type-2 diabetes, prostate cancer, testicular cancer and breast cancer.

45.     Chromium used in electroplating and chemical manufacture and may cause  heritable genetic damage to human germ cells and effect human reproduction or development. It can cause skin rashes, ulcers, weakened immune systems, kidney and liver damage, and Lung cancer.

46.     Dieldrin is considered by NIOSH to be a potential occupational carcinogen. Dieldrin accumulates in the body cause possible cumulative  effects.

47.     Hexachlorocyclohexane is a possible human carcinogen.  It may effect the central nervous system, bone marrow, liver, sex hormones and genital system. Animal tests show that this substance possibly causes toxic effects upon human reproduction.

48.     Lindane is an extremely hazardous substance (pursuant to 42 U.S.C. 11002) and is a neurotoxin that may cause effects on the central nervous system. Lindane exposure may result in death. Tumors have been detected in experimental animals indicating that it may have effects on the liver in humans.

49.     Lead affects almost every organ and system in the human body; it can damage organs, cause permanent developmental disabilities, seizures, coma, and even death.  Lead exposure has its strongest effect on children and child brain development.   Children exposed to even low levels of lead often develop difficulties learning, and if the exposure does not stop, the damage will continue and is permanent.  The Centers for Disease Control (CDC) has determined that no safe blood lead level in children has been identified.[2]

50.     Mercury exposure can cause brain, kidney, and lung damage and may seriously harm a developing fetus. Exposure to even low levels of airborne mercury for prolonged periods

---

[2] See: http://www.cdc.gov/nceh/lead/

of time can cause irritability, sleep disturbances, excessive shyness, tremors, coordination problems, changes in vision or hearing, and memory problems.

51.     Petroleum products, including hexane, benzene, toluene, xylenes, naphthalene, and fluorine, may cause damage to the lungs, central nervous system, liver, and kidneys. Some petroleum compounds have also been shown to affect reproduction and the developing fetus in animals. Benzene is a known human carcinogen.

52.     Phenol is an extremely hazardous substance (pursuant to 42 U.S.C. 11002) and can cause respiratory irritation, headaches, and burning eyes. People who had skin exposure to high amounts of phenol had skin burns, liver damage, irregular heart beat, and some died. Ingestion of high concentrations of phenol has resulted in internal burns and death.

53.     Plating tank sludge contains heavy metals, oil and grease and suspended solids at hazardous levels.

54.     PAHs.  The Centers for Disease Control and Prevention characterize PAHs as probable carcinogens, associated with risk of lung, genitourinary, and skin cancers.

55.     PCBs are an odorless group of volatile synthetic organic chemicals and are either oily liquids or solids.  PCBs enter the environment as mixtures containing a variety of individual chlorinated biphenyl components, known as congeners, as well as impurities.

56.     Once released into the environment, PCBs do not readily break down and therefore remain for long periods of time cycling between air, water, and soil.

57.     PCBs have been demonstrated to cause cancer, as well as a variety of other adverse health effects on the immune system, reproductive system, nervous system, and endocrine system. The manufacture of PCBs was stopped in the U.S. in 1977 because of evidence they build up in the environment and can cause harmful health effects.

58.     Upon information and belief, all the above-referenced contaminants, and their derivatives, in amounts and concentrations above State and Federal residential safety levels, were and continue to be released, discharged, and disbursed throughout the neighborhood from the Site.

59.     The contamination has been allowed to migrate onto Plaintiffs' properties, causing Plaintiffs to suffer ongoing injuries, including significant health impairments and damage to their properties, as well as putting them at high risk for future, latent diseases and cancers.

60.     The contamination continues to be released, dispersed or otherwise discharged via surface water, groundwater, air and other manners onto Plaintiffs' properties and persons to the present date.

61.     As of the date of this filing the Town of Wheatfield and the DEC continue to state publicly that there is no cause for concern, that contamination has not been released outside of the Site on to private property, and that there has been no impact to residents' property or health.

## **PLAINTIFFS**

62.     The Plaintiffs are current or previous owners of residential property, or current or previous renters of residential property who have lived in the affected area for at least one (1) year.

63.     Plaintiff Alicia Bellafaire lived at 9 Forbes Terrace, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

64.     Plaintiff Joshua Clark lived at 51 Forbes Terrace, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

65.     Plaintiff Jennifer Flammger lived at 44 Forbes Terrace, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

66.     Plaintiff Andrew Heim lives at 62 Forbes Terrace, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

67.     Plaintiff John Kehoe lived at 75 Forbes Terrace, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

68.     Plaintiff Douglas Krull lived at 1479 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

69.     Plaintiff Jennifer Page lived at 51 Forbes Terrace, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

70.     Plaintiff Cynthia Penman lived at 7063 Nash Road, North Tonawanda NY 14120, for approximately 14 years, and 1464 Master Street, North Tonawanda NY 14120, for approximately 5 years, and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

71.     Plaintiff William Penman lived at 626 Ohio Street, North Tonawanda NY 14120, for approximately 11 years, and 1464 Master Street, North Tonawanda NY 14120, for

approximately 5 years, and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

72.     Plaintiff Jodee Riordan lived at 51 Forbes Terrace, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

73.     Plaintiff James Stuermer lived at 51 Forbes Terrace, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

74.     Plaintiff Salvatore Alessandra lives at 51 Forbes Terrace, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

75.     Plaintiff Salvatore Alessandra, as natural parent of A.A. lives at 51 Forbes Terrace, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

76.     Plaintiff Salvatore Alessandra, as natural parent of S.A. lives at 51 Forbes Terrace, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

77.     Plaintiff Salvatore Alessandra, as natural parent of I.A. lives at 51 Forbes Terrace, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

78.     Plaintiff Johnathan Bencic lives at 22 Forbes Terrace, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

79.     Plaintiff Jillian Bencic lives at 22 Forbes Terrace, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

80.     Plaintiff John Corrigan lives at 1459 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

81.     Plaintiff Joan Corrigan lives at 1459 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

82.     Plaintiff Drew Dionne lives at 1403 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

83.     Plaintiff Drew Dionne, as natural parent of H.D. (I) lives at 1403 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

84.     Plaintiff Drew Dionne, as natural parent of H.D. (II) lives at 1403 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

85.     Plaintiff Kyle Faulkner lives at 1472 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

86.     Plaintiff Nicole Faulkner lives at 1472 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

87.     Plaintiff Charles Freeburg lives at 1640 Nash Road, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

88.     Plaintiff Valerie Freeburg, as natural parent of E.F. lives at 1640 Nash Road, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

89.     Plaintiffs Valerie Freeburg, as natural parent of C.F. lives at 1640 Nash Road, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

90.     Plaintiff Laurie Grady lived at 1346 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

91.     Plaintiff Roger Grady is the husband of Laurie Grady who has suffered significant personal injuries from exposure. Mr. Grady has suffered a loss of consortium, love, support, affection, and any other damages allowed by law as a result of his wife's significant issues.

92.     Plaintiff Nicholas Iacona lives at 7266 Norman Road, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

93.     Plaintiff Darleen Iacona lives at 7266 Norman Road, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

94.     Plaintiff Pino Iacona lives at 7266 Norman Road, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

95.     Plaintiff Robert Jachimiak lives at 16 Forbes Terrace, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

96.     Plaintiff Sara Jachimiak lives at 16 Forbes Terrace, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

97.     Plaintiff Earline James lives at 1416 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

98.     Plaintiff Steven James lived at 1416 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

99.     Plaintiff Robin James is the wife of Steven James who has suffered significant personal injuries from exposure. Ms. James has suffered a loss of consortium, love, support, affection, and any other damages allowed by law as a result of her husband's significant issues.

100.    Plaintiff Donna Johnson lives at 1394 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

101.    Plaintiff Dorothy Koepsell lives at 1450 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

102.    Plaintiff James Koepsell lives at 1450 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

20

103.    Plaintiff Jason Koepsell lived at 1450 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

104.    Plaintiff Deborah Kramer lived at 1416 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

105.    Plaintiff Steven Krolczyk lived at 1299 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

106.    Plaintiff Michael Labushesky lives at 1346 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

107.    Plaintiff Helen Labushesky lives at 1346 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

108.    Plaintiff Helen Labushesky, as administrator of the estate of James Labushesky lives at 1346 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

109.    Plaintiff Ann McClain lives at 57 Forbes Terrace, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

110.    Plaintiff Andrew McClain lives at 57 Forbes Terrace, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

111.    Plaintiff Scott McEldowney lived at 1395 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

112.    Plaintiff LeaAnn McEldowney-Howarth lives at 1395 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

113.    Plaintiff Jane Neumann lives at 1374 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

114.    Plaintiff Deanna Patterson lives at 7288 Knoll Drive, North Tonawanda NY 14120, and lived at 1395 Forbes Street for approximately 24 years, and has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

115.    Plaintiff Matthew Patterson lives at 7288 Knoll Drive, North Tonawanda NY 14120, and lived at 1395 Forbes Street for approximately 4 years, and has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

116.    Plaintiff Paul Rados lived at 1469 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

117.    Plaintiff Ruth Rados lives at 1469 Forbes Street, North Tonawanda NY 14120, and has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

118.    Plaintiff Pamela Rados-Hall lives at 1469 Forbes Street, North Tonawanda NY 14120, and has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

119.    Plaintiff Shawn Rance lived at 1727 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

120.    Plaintiff Mark Reist lived at 1694 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

121.    Plaintiff Kayla Reist lived at 1694 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

122.    Plaintiff Eric Reist lived at 1694 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

123.    Plaintiff Mary Richards lives at 9 Forbes Terrace, North Tonawanda NY 14120, and has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

124.    Plaintiff Harry Richards, Jr. lives at 9 Forbes Terrace, North Tonawanda NY 14120, and has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

125.     Plaintiff Amanda Roeser lived at 1484 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

126.     Plaintiff Thomas Skupien lives at 1459 Forbes Terrace, North Tonawanda NY 14120, and has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

127.     Plaintiff Edward Stapleton lived at 44 Forbes Terrace, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

128.     Plaintiff Rosanne Stapleton is the wife of Edward Stapleton who has suffered significant personal injuries from exposure. Ms. James has suffered a loss of consortium, love, support, affection, and any other damages allowed by law as a result of her husband's significant issues.

129.     Plaintiff Craig Stonebraker lived at 16 Forbes Terrace, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

130.     Plaintiff Winona Stonebraker lives at 16 Forbes Terrace, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

131.     Plaintiff James Stonebraker lives at 16 Forbes Terrace, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

132.    Plaintiff Jourdan Sutton lives at 1403 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

133.    Plaintiff Sherry Warner lives at 1727 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

134.    Plaintiff Gail Warner (aka Gail Wildt) lives at 1451 Forbes Street, North Tonawanda NY 14120, and lived at 1727 Forbes Street, North Tonawanda, NY 14120 for approximately 16 years, and has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

135.    Plaintiff Zachary Warner lives at 1727 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

136.    Plaintiff Erica Wirth lived at 1670 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

137.    Plaintiff Theodore Wirth lived at 1670 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

138.    Plaintiff Donna Wirth lived at 1670 Forbes Street, North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

139.     Plaintiff Robert Zalewski lives at 1618 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

140.     Plaintiff Chris Ellen Zalewski lives at 1618 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

141.     Plaintiff Chris Ellen Zalewski, as natural parent of K.Z., lives at 1618 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

142.     Plaintiff Joshua Doroshenko lives at 1352 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

143.     Plaintiff Joshua Doroshenko, as natural parent of C.D. (I), lives at 1352 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

144.     Plaintiff Joshua Doroshenko, as natural parent of C.D. (II), lives at 1352 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

145.     Plaintiff Joshua Doroshenko, as natural parent of C.D. (III), lives at 1352 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

146.     Plaintiff Nicole Doroshenko lives at 1352 Forbes Street, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

147.    Plaintiff Edward Guido lives at 1596 Nash Road, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

148.    Plaintiff Jennifer Guido lives at 1596 Nash Road, North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

149.    The causes of action related to contamination and exposure are continuing in nature.  Plaintiffs have and continue to engage in activities on their properties that require them to come into direct contact with subsurface and surface soil.

150.    Plaintiffs were personally exposed and continue to be exposed to hazardous and toxic substances, contaminants, and pollutants from the above mentioned Site via ingestion, inhalation, and or/dermal contact, during normal day activities such as walking in the neighborhood and the Site property, gardening and doing yard work, playing in their yards, as well as living in their homes.

151.    Plaintiffs are an 'exposed population' as defined in Section 6.8.1 of the ATSDR Public Health Assessment Guidance Manual as follows:

152.    A population is considered exposed if a completed exposure pathway, which links a contaminant with a receptor population, exists in the past, present, or future. An exposed population includes persons who ingest, inhale, or contact site contaminants or are exposed to radiation in the past, present, or future. Examples of exposed persons include those who:

- *have ingested, are ingesting, or will ingest the contaminant from one or more environmental media;*
- *have inhaled, are inhaling, or will inhale the contaminant from one or more environmental media;*
- *have contacted, are contacting, or will contact the contaminant in one or more environmental media; and*
- *were exposed, are exposed, or will be exposed to gamma radiation from one or more environmental media.*

*If an environmental medium (soil) contains a contaminant of concern at a point of exposure (a residential yard), and evidence already exists that a route of exposure (ingestion) has occurred, is occurring, or will occur, the health assessor should assume that persons living at that residence are exposed or will be exposed. If the residential yard contains a vacant house, the health assessor should assume that future residents will be exposed. Persons should also be considered exposed if exposure has been verified by human biologic measurements or medical examination. For health assessments, human biologic measurements or medical examination are not necessary for the assignment of an exposure category to a population.*

## **DEFENDANTS**

153.     Defendant, TOWN OF WHEATFIELD, individually and as Successor in Interest to NIAGARA SANTITATION COMPANY ("WHEATFIELD"), is a municipal corporation founded in 1836 located in the southern portion of Niagara County, New York.

154.      WHEATFIELD is now and at all times relevant to this action was the owner of the Nash Road Landfill.

155.     WHEATFIELD at all times relevant to this action was the operator of the Nash Road Landfill.

156.     Upon information and belief, the Nash Road Landfill operated from approximately 1955 to 1969.  During all time relevant to this action WHEATFIELD, as owner of the Landfill, contracted with NIAGARA SANTITATION COMPANY to operate said Landfill on behalf of WHEATFIELD.

157.     Upon information and belief, defendant WHEATFIELD accepted chemical, industrial, and hazardous waste for disposal at the Nash Road Landfill.

158.     Defendant WHEATFIELD did not adequately control the Landfill or properly segregate the chemical waste from regular municipal waste.

159.     Defendant, OCCIDENTAL CHEMICAL CORPORATION, individually and as Successor in Interest to HOOKER CHEMICAL AND PLASTICS CORPORATION ("OCCIDENTIAL/HOOKER"), is a wholly owned subsidiary of Occidental Petroleum Corporation,  and is a leading chemical manufacturer that has continually operated a chemical plant in Niagara Falls, New York, for over one hundred years.

160.     Defendant OCCIDENTAL/HOOKER is infamous for having created one of the worst hazardous chemical disasters in United States history: Love Canal.

161.    OCCIDENTAL/HOOKER's dumping of tens of thousands of tons of chemicals in Niagara County resulted in a federal health emergency and lead to federal legislation to address hazardous waste dump sites (Superfund).

162.    Upon information and belief, defendant OCCIDENTAL/HOOKER knew or should have known that Love Canal waste was transferred from the Love Canal site and disposed at the Nash Road Landfill.

163.    On or about 1969-1970, defendant Occidental/Hooker constructed a brine/salt pipeline to transmit brine from mines in Wyoming, New York to its facility in Niagara Falls, New York.  The approximately fifty-mile pipeline travels through the southern border of the site along the National Grid/Niagara Mohawk right of way, east-west parallel to Forbes Street.  Defendant Occidental/Hooker has continuously owned and operated this pipeline and is responsible for its repair and maintenance. The disturbed soil and pipeline bedding has provided an additional  pathway for site contamination in liquid and vapor forms to travel off-site and into the Plaintiffs' neighborhood.

164.    Defendant, BELL HELICOPTER TEXTRON, INC., individually and as Successor in Interest to BELL AIRCRAFT CORPORATION ("BELL"),  is an industry-leading producer of commercial and military, vertical-lift aircraft and operated an aircraft manufacturing plant in Wheatfield, New York during all times relevant to this action.

165.    Upon information and belief, defendant BELL disposed of industrial and/or chemical waste at the Nash Road Landfill.

166.    Upon information and belief, CARBORUNDUM COMPANY operated a manufacturing facility from 1895 to approximately the mid-1970s in Niagara Falls, New York.

167.    Defendant, CROWN BEVERAGE PACKAGING, LLC individually and as Successor in Interest to CONTINENTAL CAN ("CONTINENTAL"). CROWN BEVERAGE

PACKAGING, LLC is a foreign Limited Liability Company authorized to do business in New York State.  CONTINETAL manufactured tin cans, and expanded over the years to other metals, paper and fiber containers, crown caps, and plastics.

168.     Upon information and belief, during all times relevant to this action defendant CONTINENTAL CAN operated a facility in Tonawanda, New York.

169.     Upon information and belief, defendant CONTINENTAL CAN disposed of industrial and/or chemical waste at the Nash Road Landfill.

170.     Defendant, GREIF, INC individually and as Successor in Interest to GREIF BROS. COOPERAGE CORPORATION ("GREIF").  GREIF, INC is a foreign Limited Liability Company authorized to do business in New York State.  The company manufactured industrial packaging systems carrying such products as steel containers, fiber drums, plastic drums, bulk containers, water bottles, container closure systems, corrugated containers, dunnage products, protective packaging, multiwall packaging, and containerboard at its Niagara Falls, Canada plant.

171.     Upon information and belief, defendant GREIF disposed of industrial and/or chemical waste at the Nash Road Landfill.

172.     REPUBLIC SERVICES, INC. individually and as Successor in Interest to NIAGARA SANITATION COMPANY, INC.

173.     Upon information and belief, defendant NIAGARA SANITATION COMPANY, INC. accepted chemical, industrial, and hazardous waste for disposal at the Nash Road Landfill.

174.     Defendant NIAGARA SANITATION COMPANY, INC. did not adequately control the Landfill or properly segregate the chemical waste from regular municipal waste.

175.     Upon information and belief, defendant NIAGARA SANITATION COMPANY, INC. disposed of industrial and/or chemical waste at the Nash Road Landfill.

176.    HONEYWELL INTERNATIONAL INC. individually and as Successor in Interest to BELL AEROSPACE.

177.    Upon information and belief, defendant BELL AEROSPACE disposed of industrial and/or chemical waste at the Nash Road Landfill.

178.    PYROTEK INCORPORATED individually and as Successor in Interest to the CARBORUNDUM COMPANY.

179.    Upon information and belief, defendant PYROTEK INCORPORATED purchased business units of the CARBORUNDUM COMPANY that disposed of industrial and/or chemical waste at the Nash Road Landfill.

180.    When reference is made in this First Amended Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

181.    The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

182.    Upon information and belief, each of the Defendants are responsible, negligently, intentionally and/or in some actionable manner, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiffs, as alleged, either through each Defendant's own conduct or through the conduct of their agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

## COUNT I – RECOVERY OF COSTS UNDER CERCLA § 107(a)

183.    Plaintiffs re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 204 of this complaint as though fully restated herein.

184.    The Nash Road Landfill Site is a "facility" within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9), and there has been a release of hazardous substances at that facility which has necessitated the incurrence of responses costs consistent with the National Contingency Plan, 40 C.F.R. Part 300.

185.    As the owner and operator of the Site at the time of disposal of hazardous substances, Defendant Town of Wheatfield is strictly liable under Section 107(a)(2) of CERCLA for all response costs incurred and to be incurred by Plaintiffs  in connection with the Site.

186.    As persons who arranged for disposal of hazardous substances at the Nash Road Landfill, Defendants are strictly liable under Section 107(a)(2) of CERCLA for all response costs incurred and to be incurred by Plaintiffs  in connection with the Site.

## COUNT II – RIGHT TO CONTRIBUTION UNDER CERCLA § 113(1)

187.    Plaintiffs re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 208 of this complaint as though fully restated herein.

188.    Defendants are all persons liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), as set forth more fully above.

189.    As persons liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), Defendants are also liable to Plaintiffs for contribution with respect to Plaintiffs' response costs pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f).

## COUNT III – DECLARATORY RELIEF AS TO FUTURE
## COSTS UNDER CERCLA § 113(g)(2)

190.     Plaintiffs re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 211 of this complaint as though fully restated herein.

191.     There is a present and actual controversy between Plaintiffs and Defendants concerning their respective rights and obligations with respect to CERCLA response costs associated with the Nash Road Landfill Site.

192.     CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), provides that courts "shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

193.     Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), as to the rights and duties of the parties and, in particular, a determination that Defendants are liable under CERCLA §§ 107(a) and 113(f), 42 U.S.C. §§ 9607(a) and 9613(f), for past, present, and future costs of assessment, containment, response, removal, and remediation arising from the presence of hazardous substances, at the Site.

### COUNT IV: 42 U.S.C. § 1983 – SUBSTANTIVE DUE PROCESS – STATE CREATED DANGER
#### (Against Town of Wheatfield)

194.     Plaintiffs re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 215 of this complaint as though fully restated herein.

195.     Plaintiffs, in this action, are citizens of the United States or lawful permanent residents and all of the Defendants are persons for purposes of 42 U.S.C. § 1983.

196.     Defendant Town of Wheatfield was, at all times relevant hereto, acting under the color of law and its acts and/or omissions were conducted within the scope of their official duties and employment.

197.     Policies and procedures of the Town of Wheatfield condoned and effectuated the wrongdoing of individual government officials.

198.     Plaintiffs herein, at all times relevant hereto, have a clearly established Constitutional right under, inter alia, the Fourteenth Amendment, such that a Town or other state-actor cannot deprive a person of their life, liberty or property without due process of law.

199.     Defendant Town of Wheatfield acted to expose the Plaintiffs to toxic contaminants and industrial solvents, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs.

### COUNT V: 42 U.S.C. § 1983 – SUBSTANTIVE DUE PROCESS – BODILY INTEGRITY
### (Against Town of Wheatfield)

200.     Plaintiffs re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 221 of this complaint as though fully restated herein.

201.     Plaintiffs, in this action, are citizens of the United States or lawful permanent residents and all of the Defendants are persons for purposes of 42 U.S.C. § 1983.

202.     Defendant Town of Wheatfield, at all times relevant hereto, was acting under the color of law, and its acts and/or omissions were conducted within the scope of its official duties.

203.     Plaintiffs have a clearly established right to bodily integrity under the Fourteenth Amendment. At all times relevant hereto, that right is and has been well established.

204.     Defendant Town of Wheatfield was aware that its conduct could result in the deprivation of Individual Plaintiffs' fundamental due process rights to bodily integrity.

205.    Defendant Town of Wheatfield deliberately and knowingly breached the constitutionally protected bodily integrity of Plaintiffs by creating and perpetuating the ongoing exposure to an unmaintained, unmonitored and unsecured hazardous waste site, with deliberate indifference to the known risks of harm which said exposure would, and did, cause to Plaintiffs.

206.    Defendant Town of Wheatfield had the opportunity to reflect and deliberate before they acted and/or failed to act.

207.    In exposing Plaintiffs to toxic contaminants and industrial solvents, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin,  endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs, Defendant Town of Wheatfield has violated Plaintiffs' right to bodily integrity. Defendants failed to protect the Plaintiffs from a foreseeable risk of harm from exposure to the contaminants.

208.    As a result of Defendant Town of Wheatfield's actions and/or omissions, Plaintiffs suffered bodily harm and their rights to bodily integrity were violated.

209.    Defendant Town of Wheatfield's actions and omissions were malicious, reckless, and/or were made with deliberate indifference to Plaintiffs' constitutional rights. Defendant Town of Wheatfield engaged in these acts willfully, maliciously, in bad faith, and/or in reckless disregard for Plaintiffs' constitutional rights.

210.    These actions shock the conscience of the Plaintiffs and of any reasonable person.

211.    As a result of the Defendant Town of Wheatfield's unlawful conduct, Plaintiffs have suffered injuries and seek relief.

212.    Defendant Town of Wheatfield's actions and/or omissions were the proximate cause of the Plaintiffs' injuries.

213.     As a direct and proximate result of all of Defendant Town of Wheatfield's actions and/or failures to act, Plaintiffs have suffered past, present and future personal injuries, including (but not necessarily limited to): various health problems,  shortened life expectancy, miscarriage, physical pain and suffering, mental anguish, medical expenses, medical monitoring expenses, wage loss, brain and developmental injuries, cognitive deficits, lost earning capacity, aggravation and exacerbation of pre-existing conditions, and punitive damages.

## COUNT VI – STATE LAW NEGLIGENCE

214.     Plaintiffs re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 235 of this complaint as though fully restated herein.

215.     Negligence may exist both as an omission as well as an affirmative act.[3]  A cause sounding in negligence allows for the recovery for an injury that was proximately caused by another's violation of a duty of reasonable care.[4]

216.      Defendant the Town of Wheatfield, as owner and operator of the Site that accepted disposal of toxic contaminants and solvents, owed Plaintiffs a cognizable duty to exercise reasonable care in the disposal of toxic chemicals including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs.

217.     Defendants breached their duty of reasonable care which a reasonably prudent person should use under the circumstances by negligently storing, disposing of, or otherwise

---

[3] See, e.g., *Zellar v. Tompkins Community Hospital*, 508 N.Y.S.2d 84 (3d Dep't 1986) (failure of hospital to adopt adequate staffing program stated a cause of action for negligence); *Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp.*, 379 N.Y.S.2d 873 (4th Dep't 1976) (event organizer's failure to provide adequate security and crowd control stated a cause of action for negligence).
[4] Am Jur. 2d, Negligence § 1

causing the release into the ground toxic chemicals, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs, and negligently permitting their release into the soil and surface and groundwater in and around the Site and in the vicinity of Plaintiffs' real property.

218.    The release of the Contaminants into the soil and surface and groundwater water is the proximate and legal cause of the injuries suffered by the Plaintiffs to their health and well being and to their properties and the adjacent properties.

219.    To the extent that Defendants' actions resulted in the discharge and/or release of toxic contaminants into the soil and groundwater, thereby entering and injuring Plaintiff's physical and mental well-being, their real and personal property, and their economic interests, Defendants are jointly and severally liable for all damages from contamination in this case, their physical and mental well-being, their real and personal property, and their economic interests.

220.    Upon learning of the release of the contaminants, Defendants owed Plaintiffs a duty to timely notify them that the aforementioned release from the Site had occurred.

221.    Defendants breached that duty by failing to timely notify the Plaintiffs of the release of the contaminants at the Site, and, consequently, in the vicinity of their homes and rental properties.

222.    As a result of Defendants' breaches of their duty to timely notify the Plaintiffs, the Plaintiffs were forestalled from undertaking effective and immediate remedial measures and Plaintiffs have expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years into the future.

223.    Upon learning of the release of the contaminants, Defendants owed Plaintiffs a duty to warn the Plaintiffs of the release of the contaminants and the dangers to the Plaintiffs, their property, and neighboring properties that resulted therefrom.

224.    Defendants breached this duty by failing to adequately warn the Plaintiffs of the release of the contaminants and the potential dangers and harms that could result.

225.    As a result of Defendants' breaches of their duty to warn the Plaintiffs of the release of the contaminants and the potential dangers and harms that could result, the Defendants' actions and omissions are the proximate and legal cause of the injuries suffered by the Plaintiffs to their health and well being and to their properties and the adjacent properties.

226.    Defendants further had a duty to the Plaintiffs upon learning of the release of the contaminants to act reasonably to remediate, contain, and eliminate the spill before it injured Plaintiffs and their property and/or to act reasonably to minimize the damage to Plaintiffs' property.

227.    Defendants breached that duty by failing to act reasonably to remediate, contain, the eliminate contaminants before they injured Plaintiffs and their property and/or to act reasonably to minimize the damage to Plaintiffs' property.

228.    As a result of Defendants' breaches of their duty to Plaintiffs by failing to act reasonably to remediate, contain, and eliminate the contaminants, the Defendants' actions and omissions are the proximate and legal cause of the injuries suffered by the Plaintiffs to their health and well being and to their properties and the adjacent properties.

229.    Defendants had a duty to the Plaintiffs to ensure that the Contaminants at the Wheatfield site were sufficiently secure as to prevent the release of the contaminants into the environment surrounding their facilities and into the Plaintiffs' homes and rental properties and neighboring properties.

230.   Defendants negligently breached their duties to the Plaintiffs to ensure that their refining and storage facilities were safe and sufficiently secure as to prevent the release of the contaminants into the environment surrounding their facilities and, consequently, as a result of this breach, contaminants entered into the surrounding Plaintiffs' homes and rental properties.

231.   As a result of Defendants' breaches of their duty to Plaintiffs by failing to ensure that the Site was safe and sufficiently secure as to prevent the release of the contaminants into the environment surrounding the Site, they are the proximate and legal cause of the injuries suffered by the Plaintiffs to their health and well being and to their properties and the adjacent properties.

232.   Defendants had a legal duty to properly remediate the contamination from their activities at the Site and had full knowledge of the extent of the contamination and the threat it poses to human health and safety.

233.   Defendants willfully and wantonly breached their legal duty to properly remediate the contamination despite full knowledge of the extent of the contamination and the threat it poses to human health and safety.

234.   As a result of Defendants' breaches of their legal duty to properly remediate the contamination despite full knowledge of the extent of the contamination and the threat it poses to human health and safety, they are the proximate and legal cause of the injuries suffered by the Plaintiffs to their health and well being and to their properties and the adjacent properties.

235.   Each and every one of these Plaintiffs suffered foreseeable injuries and damages as a proximate result of said Defendants' negligent breach of their duties as set forth above. At the time Defendants breached their duties to Plaintiffs, Defendants' acts and/or failures to act posed recognizable and foreseeable possibilities of danger to Plaintiffs so apparent as to entitle Plaintiffs to be protected against such actions or inactions.

236.     Accordingly, Plaintiffs seek damages from Defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs to their original position, including, but not limited to, injuries to persons, consequential damages for medical monitoring, the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and consequential damages flowing from the trespass which are the natural and proximate result of Defendants conduct in an amount to be proved at trial. Upon information and belief such amount exceeds the jurisdictional amount of the lower courts.

## COUNT VII – STATE LAW STRICT LIABILITY

237.     Plaintiffs re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 258 of this complaint as though fully restated herein.

238.     Activities such as the disposal of hazardous chemical wastes as is the case herein constitutes an abnormally dangerous activity for which strict liability will apply.

239.     Defendants' aforesaid failure to employ reasonable care which a reasonably prudent person should use under the circumstances by storing, disposing of, or otherwise releasing into the ground dangerous contaminations, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs, constitutes ultra-hazardous and abnormally dangerous activities involving ultra-hazardous, abnormally dangerous substances.

240.    Defendants allowed or caused these ultra-hazardous and abnormally dangerous substances to leak into the surrounding land and surface water, and in doing so, failed to warn Plaintiffs of the dangerous condition that was caused thereby.

241.    The risks posed by such activities outweigh any value associated with the same. As the result of said ultra-hazardous and abnormally dangerous activities, Plaintiffs have suffered damages and imminent, substantial and impending harm to their health, families, and home values. Plaintiffs have expended or will be forced to expend significant resources to safeguard their health and property, obtaining monitoring, testing, remediation services or equipment, as well as health monitoring, indefinitely for years and decades into the future.

242.    By reason of the foregoing, Defendants are strictly liable in tort for the damages sustained by Plaintiffs.

243.    Accordingly, Plaintiffs seek damages from Defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs to their original position, including, but not limited to injuries to persons, consequential damages for medical monitoring, the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and consequential damages flowing from the trespass which are the natural and proximate result of Defendants conduct in an amount to be proved at trial.  Upon information and belief such amount exceeds the jurisdictional amount of the lower courts.

### COUNT VIII – STATE LAW NUISANCE

244.    Plaintiffs re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 265 of this complaint as though fully restated herein.

245.    Under a cause of action for private nuisance, Parties may be subject to liability for environmental contamination if their conduct invades another's private use and enjoyment of land and if such invasion is: 1) intentional and unreasonable; 2) negligent or reckless; or 3) actionable under the rules governing liability for abnormally dangerous conditions or activities.[5]

246.    Defendant Town of Wheatfield and its predecessor owned and continue own, occupied and continue to occupy, and controlled and continue to control the real property at the Site.

247.    At all times mentioned herein, Defendants had knowledge and/or notice of the hazardous nature of the waste they dumped at the Nash Road Landfill.

248.    At all times mentioned herein, Defendants knew or should have known that the Nash Road Landfill was not a hazardous waste dump, and therefore not designed to contain hazardous waste.

249.    At all times mentioned herein, Defendants knew or should have known the dangerous condition that the contaminants presented and failed to take reasonable acts to cleanup, correct, or remediate that condition.

250.    Additionally, Defendants owed a duty to Plaintiffs to take reasonable action to eliminate, correct, or remedy any dangerous condition existing on the Site that was reasonably foreseeable to injure Plaintiffs and/or Plaintiffs' real property, and of which they had knowledge and/or notice.

251.    Further, Defendants owed a duty to exercise reasonable care to prevent a condition thereon from endangering the neighboring premises and occupants. Defendants have breached these duties, and each of them, by negligently, willfully, and/or wantonly creating a

_____

[5] *Copart Industries, Inc. v. Consolidated Edison Co. of New York, Inc.*, 41 N.Y.2d 564 (1977); *Snyder v. Jessie*, 546 N.Y.S.2d 777 (Sup 1989), *order aff'd as modified*, 565 N.Y.S.2d 924 (4th Dep't 1990); Restatement, Second Torts § 822.

dangerous condition on the Site by allowing massive quantities toxic contaminants to be disposed of, or otherwise released into the ground, soil, groundwater and/or aquifer on the Site. This dangerous condition is reasonably foreseeable to cause injury and damage to Plaintiffs and their property due to the size and nature of the releases of the Contaminants and the proximity of Plaintiffs and their properties.

252.    Defendants owed a duty to Plaintiffs to exercise reasonable care to keep the dangerous Contaminants from being discharged or allowed to escape, enter surrounding properties, and cause injury and damage.

253.    Defendants breached their duty to Plaintiffs by failing to exercise reasonable care in the use of the Site to prevent endangering the neighboring premises and occupants. Specifically, Defendants negligently, willfully, and/or wantonly allowed massive quantities of Contaminants to be disposed of, or otherwise released into the ground, soil, groundwater and/or aquifer at the Site.

254.    Defendants further breached their duty to Plaintiffs by failing to exercise reasonable care in the use of the Site as prevent large and unknown quantities of the Contaminants to degrade, mix with other chemicals, and escape from their property and enter onto and under Plaintiffs' property. The above-described breaches endangered, injured, and damaged the neighboring premises and occupants. Such a dangerous condition is reasonably foreseeable to cause injury and damage to Plaintiffs and their property.

255.    Defendants' breach caused dangerous Contaminants to be released onto Plaintiffs land and caused noxious gases, fumes and odors to emanate from their soil and homes.

256.    Additionally, this breach has caused Plaintiffs injury to their persons and property that is certain, substantial, and this resulting condition interferes with Plaintiffs physical comfort.

257.     Plaintiffs seek general damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate them for the injuries and losses sustained, and to restore Plaintiffs to their original position, including, but not limited injuries to persons,   consequential damages for medical monitoring, the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and the direct and consequential damages flowing from the trespass and resulting condition which are the natural and proximate result of Defendants conduct in an amount to be proved at trial. Upon information and belief, such amount exceeds the jurisdictional amount of all lower courts.

## COUNT IX – STATE LAW TRESPASS

258.     Plaintiffs re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 279 of this complaint as though fully restated herein.

259.     Environmental contamination of a property constitutes a trespass as it interferes with the conditions of the property.[6] This act of trespass is, in and of itself, objectionable.[7]

260.     Upon information and belief, Defendants had knowledge of the hazardous nature of their waste and the ability to excavate and remove it from the Site to a proper hazardous waste facility at all relevant times.

261.     Upon information and belief Defendants' negligent, willful, and/or wanton actions and/or intentional failures to act caused an uncontrolled quantity of Contaminants to be spilled, disposed of, or otherwise released into the ground, soil, groundwater, and aquifer at the Site.

---

[6] See *State v. Fermenta ASC Corp.*, 630 N.Y.S.2d 884 (Sup 1995), aff'd in part, 656 N.Y.S.2d 342 (2d Dep't 1997).
[7] See *PBN Associates v. Xerox Corp.*, 517 N.Y.S.2d 1015 (Sup 1987), *judgment modified*, 529 N.Y.S.2d 877 (2d Dep't 1988) *and decision modified on reargument on other grounds*, 575 N.Y.S.2d 451 (2d Dep't 1991).

262.    Upon information and belief, the contaminants disposed of, or otherwise released into the ground, soil, groundwater, and aquifer at the Site entered and trespassed upon the land and realty of the Plaintiffs, thus interfering with the condition of Plaintiffs' properties and the neighboring properties, causing an injury to their possession and/or right of possession.

263.    Upon information and belief, Defendants took affirmative, voluntary, and intentional actions to dispose of the contaminants into the ground at an unlined municipal landfill.

264.    Upon information and belief, at the time that the above described affirmative, voluntary, and intentional acts were performed, Defendants had good reason to know or expect that the large quantities of Contaminants would pass through the soil, groundwater, and aquifer from the Site to the land of Plaintiffs and the neighboring properties.

265.    Upon information and belief, the above-described affirmative, voluntary, and intentional acts were performed with the willful intent to cause the Contaminants to be disbursed through the soil, groundwater, and aquifer without regard for the inevitable transport onto the land and property of Plaintiffs and the neighboring properties.

266.    Defendants' actions in disposing of uncontrolled amounts of the Contaminants into the ground were done with actual malice, and in wanton and willful and/or reckless disregard for Plaintiffs' rights, health and property.

267.    These voluntary and intentional actions resulted in the trespass of the Contaminants, which is continuing and ongoing on to the Plaintiffs' and neighboring and properties, thus interfering with the condition of Plaintiffs' and neighboring property, causing injury and damage to Plaintiffs, their property and their right of possession of their property.

268.    Based upon the above, Plaintiffs seek general damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to

compensate them for the injuries and losses sustained by Plaintiffs and to restore Plaintiffs to their original position, including, but not limited to, injuries to persons, consequential damages for medical monitoring, the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, consequential damages flowing from the trespass which are the natural and proximate result of Defendants conduct, and exemplary or punitive damages.

## DAMAGES

269.    Plaintiffs re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 290 of this complaint as though fully restated herein.

270.    Plaintiffs have been and continue to be exposed to elevated and hazardous levels of toxic and hazardous substances, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs.

271.    Plaintiffs were and continue to be exposed to the elevated and hazardous level of toxic and hazardous substances through dermal contact with contaminated soil, ingestion and dermal contact with fruits and vegetables and other items grown or developed in the contaminated soil, the ingestion and/or inhalation of toxic matter, and the continued physical contact with contaminated soil, vapors, and debris.

272.    Plaintiffs have sustained and will continue to sustain damages to their property as a result of Defendants' actions. As a result, Plaintiffs seek monetary damages for each violation of the First through Fourth Claims for Relief.  In particular, Plaintiffs seek (i) monetary damages for personal injuries; (ii) monetary damages reflecting the cost to remediate the property of the

contamination caused by Defendants' conduct or, in the alternative, to compensate Plaintiffs for the diminution in value of their property caused by Defendants' conduct; (iii) and monetary damages to compensate Plaintiffs for the loss of the use and enjoyment of their properties caused by Defendant's conduct.

273.    Plaintiffs also seek consequential damages sufficient to fund a medical monitoring program[8] that is reasonably tailored to the exposure risks of the contaminants emanating from Defendants' property, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs.

274.    As cancer risk from multiple agents is additive, the cumulative cancer risk posed by multiple contaminants is consequently greater that the risk posed by any single contaminant.

275.    Defendants continued negligent acts and omissions in operating and maintain the Site are the proximate cause of higher than normal, in fact excessive exposure, to hazardous substances and contaminants, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs.

276.    The resulting exposure has significantly increased the risk of Plaintiffs of contracting serious latent diseases, including but not limited to lung, skin, breast, bladder, liver, kidney, prostate cancer, and other cancers, permanent intellectual and behavioral effects on child

---

[8] Medical Monitoring is not being sought as in independent cause of action but, rather, as consequential damages in connection with the personal injury and property claims sought herein as is appropriate. *See Ivory v. Int'l Bus. Machines Corp.,* 983 N.Y.S.2d 110 (2014), *leave to appeal denied*, 11 N.E.3d 204 (2014).

development, effects on the central nervous system, respiratory, and other diseases and conditions.

277.    Each and every one of these Plaintiffs will incur future expenses for medical monitoring and, as a result, seek payment of their related medical expenses as an element of the consequential damages.

278.    In order to compensate Plaintiffs for damages suffered due to Defendants' acts, each and every Plaintiff requires, among other things, that Defendants collectively pay the future costs of obtaining necessary medical care, toxicological examinations and diagnoses, and any other medical monitoring necessary in order to ascertain and treat the nature and extent of the injuries suffered due to the contamination that emanated and continues to emanate from the Site. Many of these costs would not be covered by health care insurers, and if covered, may unfairly result in increased premiums.

279.    Each and every one of these Plaintiffs' are at a significantly elevated risk resulting from their exposure to hazardous substances and chemicals in and around their homes in the North Tonawanda and Wheatfield area can only be mitigated and/or addressed by the creation of a medical monitoring program (the "Program") including but not limited to:

        a.      Establishing a program that provides education and outreach on the existence and availability of the services established under the medical monitoring program, including but not limited to the establishment of a public Website with information about the    Program, meetings with potentially eligible populations, development and dissemination of outreach materials informing North Tonawanda and Wheatfield residents about the program, and the establishment of phone information services;

b.    Funding medical monitoring for those individuals exposed to the contaminants described of herein, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs;

c.    Funding research into possible cures for the detrimental effects of breathing, living and working near the contaminants and toxicants present in the North Tonawanda and Wheatfield area as a result of the acts and omissions alleged here;

d.    Gathering and forwarding to each and every one of these Plaintiffs' a treating physicians' information related to the diagnosis and treatment of injuries which result from their exposure(s) in and around North Tonawanda and Wheatfield;

e.    Aiding in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of each and every one of these Plaintiffs.

f.    Funding further studies of the long-term effects of the exposure.

280.    Prescribed monitoring procedures exist that makes the early detection of these diseases possible.

281.    The monitoring procedures or regimes are different from normally recommended procedures that would be used in the absence of the exposure.

282.    The prescribed medical monitoring is reasonably necessary according to contemporary scientific principals for persons such as Plaintiffs who have been exposed and continue to be exposed to excessive levels of the referenced hazardous chemicals and materials.

283.    Plaintiffs will suffer irreparable harm if the requested medical monitoring program is not implemented because they are in danger of suffering catastrophic latent diseases

as a result of their prolonged exposure to toxic and hazardous substance caused by Defendants' negligence.

284.    Detection of these diseases and early treatment is medically reasonable and necessary to prevent progression and further injuries.

285.    It is also medically reasonable and necessary to collect data and coordinate study efforts for persons exposed to such substances in order to effectively treat Plaintiffs.

286.    Establishment of a medical monitoring program for the Plaintiffs is essential as a consequential damage from their exposure to the contaminants because without the requested medical monitoring programs, they will be subjected to further injuries and delayed treatment.

287.    Plaintiffs request that the Court appoint a plan administrator, require the Defendants to fund the medical monitoring plan, and reserve jurisdiction to enforce the terms and conditions of the plan.

288.    Accordingly, Plaintiffs are entitled to a medical monitoring program which provides for medical testing, surveillance, monitoring, and study of the Plaintiffs for conditions caused by exposure to the references substances, as well as payment of their attorney's fees and expenses, and any other relief this court deems just and proper

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request the Court to enter judgment against Defendants as follows:

A.  As and for the First Cause of Action sounding in negligence, Plaintiffs seek general damages from Defendants, in an amount to be determined at trial, directly resulting from their personal  injuries and property damages in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such

value if the harm had not been done, the cost of repair or restoration, and consequential damages flowing from the trespass which are the natural and proximate result of Defendants' conduct in an amount in excess of the jurisdictional minimum, as well as punitive damages, exclusive of interest, costs, and attorneys' fees.

B.  As and for the Second Cause of Action sounding in strict liability, Plaintiffs seek general damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and consequential damages flowing from the trespass which are the natural and proximate result of Defendants' conduct in an amount in excess of the jurisdictional minimum, as well as punitive damages, exclusive of interest, costs, and attorneys' fees.

C.  As and for the Third Cause of Action sounding in nuisance, Plaintiffs seek general damages from Defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained by Plaintiffs and to restore Plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and direct and consequential damages flowing from the nuisance and trespass which are the natural and proximate result of Defendants conduct in an amount in excess of the jurisdictional minimum, as well as punitive damages, exclusive of interest, costs, and attorneys fees.

D. As and for the Fourth Cause of Action sounding in trespass, Plaintiffs seek general damages from Defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained, and to restore Plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and the direct and consequential damages flowing from the trespass and resulting condition which are the natural and proximate result of Defendants conduct in an amount in excess of the jurisdictional minimum as well as punitive damages, exclusive of interest, costs, and attorneys fees.

E. As and for the combined claims on each of the foregoing causes of action, all of which flow directly as a result of the wanton, willful and reckless conduct of the Defendants and each of the Defendants herein, Plaintiffs seek exemplary or punitive damages in addition to the compensatory damages set forth, *supra*, in an amount to be determined at trial.

F. An Order mandating that the Defendants, and each of them, and their successors and assigns, take every action necessary to assure that all relief requested herein is obtained and fully funded;

G. Award Plaintiffs the costs of this lawsuit, including but not limited to attorneys' fees and expert costs.

H. Awarding Plaintiffs such other, further, and different relief as the Court may deem appropriate and just.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury of all claims asserted in this Verified Complaint.


Dated: New York, New York                          Respectfully submitted,
      May 16, 2018

                                        NAPOLI SHKOLNIK PLLC

                           BY: *s/ Tate J. Kunkle*
                                        Paul J. Napoli
                                        Louise Caro
                                        Tate Kunkle
                                        360 Lexington Ave., 11th Floor
                                        New York, NY, 10017
                                        Tel: (212) 397-1000
                                        Fax: (646) 843-7603
                                        pnapoli@napolilaw.com
                                        lcaro@napolilaw.com
                                        tkunkle@napolilaw.com

                                        STAG LIUZZA, L.L.C.
                                        Michael Stag, Esq. (Seeking Pro Hac Vice)
CHRISTEN CIVILETTO                 Ashley Liuzza, Esq. (Seeking Pro Hac Vice)
Christen Civiletto, Esq.             One Canal Place
(Seeking Pro Hac Vice)             365 Canal Street, Suite 2850
8313 West Point Drive              New Orleans, Louisiana 70130
East Amherst, N.Y. 14051          Tel:(504) 593-9600
(716) 713-2431                   Fax: (504) 593-9601
Christenciviletto@gmail.com       mstag@stagliuzza.com
                                          aliuzza@stagliuzza.com


                               *Attorneys for Plaintiffs*