UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALICIA BELLAFAIRE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-00560 |
| | ) | |
| TOWN OF WHEATFIELD, OCCIDENTAL | ) | |
| CHEMICAL CORPORATION, BELL | ) | |
| HELICOPTER TEXTRON, INC., | ) | |
| CROWN BEVERAGE PACKAGING, LLC, | ) | |
| GREIF, INC., REPUBLIC SERVICES, INC., | ) | |
| and HONEYWELL INTERNATIONAL INC., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER GRANTING MOTIONS TO DISMISS FILED BY
DEFENDANTS TOWN OF WHEATFIELD, OCCIDENTAL CHEMICAL
CORPORATION, BELL HELICOPTER TEXTRON, INC., CROWN BEVERAGE
PACKAGING, LLC, GREIF, INC., REPUBLIC SERVICES, INC., AND
HONEYWELL INTERNATIONAL INC.**
(Docs. 21, 23, 25)

Plaintiffs are current or previous owners or renters of residential properties in

North Tonawanda, New York and the surrounding area who have lived in that area for at

least one year (collectively, "Plaintiffs"). They seek to bring a class action suit against

the Town of Wheatfield (the "Town"), Occidental Chemical Corporation, Bell Helicopter

Textron, Inc., Crown Beverage Packaging, LLC, Greif, Inc., Republic Services, Inc., and

Honeywell International Inc. (collectively, "Defendants") arising out of Plaintiffs'

alleged exposure to toxic and hazardous substances emanating from the Town's Nash

Road landfill (the "Site").

In their Amended Complaint, Plaintiffs assert the following claims: Count One:

response costs incurred or to be incurred by Plaintiffs in connection with the Site

pursuant to Section 107(a) of the Comprehensive Environmental Response,

Compensation, and Liability Act ("CERCLA"); Count Two: contribution for response

costs under Section 113(f) of CERCLA; Count Three: declaratory relief as to future costs under Section 113(g)(2), (4) of CERCLA; Count Four: the Town's violation of Plaintiffs' substantive due process rights for a state-created danger pursuant to 42 U.S.C. § 1983; Count Five: the Town's violation of Plaintiffs' substantive due process rights to bodily integrity pursuant to 42 U.S.C. § 1983; Count Six: state law negligence; Count Seven: state law strict liability; and Count Eight: state law trespass. Plaintiffs' Amended Complaint is virtually identical to the complaint the court dismissed in *Andres v. Town of Wheatfield*, 2019 WL 2491949 (W.D.N.Y. June 14, 2019). The court therefore incorporates and adopts portions of its ruling herein. *See id.* at *1-11.

## I.  Factual Background.

The Site is a closed, unlined, uncapped landfill on twenty-five acres of real property located at 7415 Nash Road, Wheatfield, New York, immediately north of the City of North Tonawanda and east of Nash Road. At all times relevant to this action, the Town owned the Site, which was operated by the Niagara Sanitation Company between 1964 and 1968 for the disposal of municipal and industrial waste.

Prior to its closure, the Site was used by the Niagara Falls Air Force Base, Bell Aerospace, Carborundum Corporation, Frontier Chemical, Graphite Specialties, Continental Can, and Greif Brothers, as well as local municipalities, to dispose of municipal, industrial, and hazardous waste. In 1968, approximately 1,600 cubic yards of waste from the Love Canal Landfill, including material from the Hooker Chemical and Plastics Corporation, was deposited at the Site. Shortly thereafter, waste disposal activities at the Site ended. The nature of the hazardous waste within the Site was not disclosed to the surrounding neighbors. There is no fencing around it or signage limiting access to the Site which appears to be a forest and is located adjacent to Plaintiffs' residences.

Plaintiffs allege that, for decades, they have used the Site for recreational purposes including walking, bike riding, riding of all-terrain vehicles and motorized dirt bikes, fishing, hunting, trapping, and dog-walking. Plaintiffs assert that the use of bikes and motorized vehicles created "airborne migration material from the Site during dry

2

conditions[,]" (Doc. 16 at 10, ¶ 35) and that during wet conditions, hazardous material was carried off-site via shoes, vehicles, and pets.

In 1981, the Niagara County Department of Health investigated the Site and concluded that "the potential for migration of chemicals off-site is present." *Id.* at 11, ¶ 36 (internal quotation marks and alteration omitted). The Department of Health recommended that the Town conduct an abatement and required that the Site be properly closed. According to Plaintiffs, "[t]his was not done." *Id.*

In 1988, the Environmental Protection Agency ("EPA") determined that "hazardous waste excavated from the Love Canal Landfill was disposed of at the Site in a trench of soft, layered clay and that no engineered barriers were installed." *Id.* at 11, ¶ 37. The excavated materials were allegedly placed at the northeast end of the Site and then covered with soil. Plaintiffs allege that water samples taken at the Site "revealed benzene at 4500 mg/L, chlorobenzene at 590mg/L, toluene at 14,000 mg/L, and acetone at 2,300 mg/L[,]" *id.*, and that lead samples ranged from 67 to 20,000 parts per billion.

The 1988 EPA Site Inspection Report (the "1988 Report") indicates that the Site was flat, drainage was poor, and prior to its use as a landfill, the Site was a swamp. The 1988 Report further notes that: (1) groundwater was contaminated and that the surrounding population could potentially be affected; (2) surface water and soils were rusty in appearance and methylene chloride, total organic halogens, and toluene were detected; (3) soil samples contained metal and organic contamination; (4) the Site was used by local residents as a play area and some local residents were believed to draw water from the contaminated aquifer; and (5) the Site included pools of orange-tinted standing water as well as rubbish protruding from the ground.

In 1989, the New York State Department of Environmental Conservation ("NYSDEC"), Division of Hazardous Waste Remediation performed a "Phase II Investigation[.]" *Id.* at 11, ¶ 39. NYSDEC's recommendations allegedly revealed that shallow groundwater at the Site contained "significant contamination of toxic organic compounds and metals and that there was a potential for the contaminants to migrate [off-Site]." *Id.* at 12, ¶ 39. NYSDEC recommended that additional work be performed to

3

determine the potential for off-Site migration and whether migration was presently occurring, including a soil-vapor survey and review of off-Site wells. To limit public access to the Site, NYSDEC advised that the Site be capped, and a fence constructed. Finally, NYSDEC recommended an investigation of whether the disposal trenches dug for the Love Canal waste had breached the clay layer and exposed the regional aquifer beneath the Site to contamination.

Plaintiffs allege that, despite the EPA's Report and NYSDEC's investigation, "no action was taken[,] . . . none of the recommendations were performed[,]" and the Site "remained just as it was." *Id.* at 12, ¶ 40. The adjacent community was not informed of any findings or directives, or warned of any potential danger to persons or property, and residents continued to use the Site for recreational activities.

On December 21, 2015, NYSDEC issued a Public Notice with regard to the Site pursuant to New York's Superfund Program, entitled "Inactive Hazardous Waste Disposal Site Classification Notice[,]" which stated in relevant part:

> As of the date of this notice, [the Site] . . . presents a significant threat to public health and/or the environment for the following reason(s): The [S]ite is a former municipal and industrial landfill that accepted waste from multiple sites, including Niagara Falls Air Force Base, Bell Aerospace, Carborundum, Frontier Chemical, Graphite Specialties, Continental Can, and Gr[ei]f Brothers. Site contaminants include metals, polycyclic aromatic hydrocarbons, polychlorinated biphenyls, pesticides, caustics, and plating tank sludge. The landfill does not have a Part 360 cap or access restrictions. Both conditions indicate a concern for potential exposures to people who enter the [S]ite. This exposure concern has been documented as people are using the landfill as a jogging and play area. Dirt bike trails are evident throughout the [S]ite and use of such has resulted in landfill materials becoming exposed at the surface. Therefore, the [S]ite represents a significant threat to the environment and public health. If you own property adjacent to this [S]ite and are renting or leasing your property to someone else, please share this information with them.

*Id.* at 12-13, ¶ 41.

With regard to the Town's involvement, Plaintiffs allege that Town officials and private agents with decision-making authority, including but not limited to former City Supervisor Stanley Brzezinski, landfill operator Angelo Zino, and Peace Justice Fred

Lemke, affirmatively acted to create and exacerbate toxic contamination at the Site. In support of this claim, Plaintiffs assert that in or around 1968, Town officials, including but not limited to Peace Justice Lemke and Supervisor Brzezinski, actively sought or approved of the disposal of highly toxic chemicals from the Love Canal at the Site. In or around September 1968, the Department of Health requested the Town take immediate steps to prepare the Site for permanent closure, but Town officials allegedly continued to encourage the Site's use and operation. Town officials also allegedly "repeatedly and purposely" circumvented the regulatory directives of the Department of Health and ignored citizen complaints related to the Site. *Id.* at 81, ¶ 202. Plaintiffs contend that the Town took steps to conceal the risks associated with the Site which they recklessly continued to operate. They allege that the Town and its officials "created a culture of deliberate indifference about the safety and conditions of the [Site] and its potential impact to Plaintiffs." *Id.* at 82-83, ¶ 209.

According to Plaintiffs, the Town:

was fully aware that the Site contained an unknown quantity of toxic chemicals, toxic contaminants and waste, industrial solvents and sludge, and banned pesticides, including but not limited to [a]ldrin, arsenic, barium, [benzotrichlorides], cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs.

*Id.* at 13, ¶ 42. Despite this awareness, the Town "left the Site abandoned for decades, without proper cleanup, oversight, or management, with no signage as to the danger, no fencing of the property to prevent access, and without engineering controls to prevent seepage and transport of contamination on to the surrounding properties." *Id.*

II.    **Procedural Background.**

On May 16, 2018, Plaintiffs filed this action. Defendants responded by filing motions to dismiss for failure to state a claim. Plaintiffs opposed those motions. At a June 18, 2018 hearing, the court granted the motions to dismiss on the record and granted Plaintiffs leave to amend.

On September 20, 2018, Plaintiffs filed the Amended Complaint. Defendants again move to dismiss, arguing Plaintiffs fail to state a claim for relief because they fail to plausibly allege their injuries, a theory of causation, and the essential elements of claims under CERCLA or for trespass.[1] The Town filed a separate motion to dismiss on the basis that Plaintiffs' conclusory allegations are insufficient to plead claims under 42 U.S.C. § 1983.

Plaintiffs oppose dismissal. On February 8, 2019, the court held oral argument and thereafter took the pending motions under advisement.

## III. Conclusions of Law and Analysis.

### A. Standard of Review.

In order to survive a Rule 12(b)(6) motion, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The sufficiency of a plaintiff's complaint is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" nor "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

### B. Whether the Amended Complaint Fails to Plausibly Allege Causation.

Defendants contend that the allegations in the Amended Complaint are nearly identical to those made in the Complaint and remain vague and conclusory with regard to

---

[1] On October 22, 2018, Defendants filed their joint motion to dismiss. (Doc. 23.) On October 23, 2018, they filed an amended motion to dismiss to add Defendant Republic Services, Inc. which had inadvertently been omitted from the initial motion. (Doc. 25.) The court considers both motions herein.

Plaintiffs' alleged injuries, which hazardous substances caused their alleged injuries, and a plausible migration pathway between Plaintiffs' properties and the Site. The court agrees that Plaintiffs' allegations remain vague and conclusory as they identify a list of contaminants and their possible health effects without alleging a plausible connection between the contaminant and a condition suffered by a Plaintiff. For example, the Amended Complaint states that benzotrichlorides "may have effects on the lungs, liver, kidneys[,] and thyroid." (Doc. 16 at 14, ¶ 46.) Individual Plaintiffs, however, are not identified as having one or more of their injuries caused by benzotrichlorides. As Defendants point out, of the 188 injuries Plaintiffs allege, "118 of them are not even alleged to be associated with any of the chemicals identified in [the Amended Complaint]." (Doc. 23-1 at 14.)

Defendants further point out that there is no "signature injury" which would be circumstantial evidence of Plaintiffs' theory of causation. *Compare S.F. v. Archer-Daniels-Midland Co.*, 2014 WL 1600414, at *6 (W.D.N.Y. Apr. 21, 2014) ("[H]ere there is no 'signature injury' definitively linking the product to the harm—as adenosis is linked to DES, mesothelioma is linked to asbestos, or emphysema is linked to cigarette smoke. . . . [The] 'injuries could have been caused by some source other than [the alleged defective product].'") (quoting *Brenner v. Am. Cyanamid Co.*, N.Y.S.2d 848, 853 (N.Y. App. Div. 1999)), *with Benefield. v. Pfizer Inc.*, 103 F. Supp. 3d 449, 460 (S.D.N.Y. 2015) (finding plaintiffs "adequately [pled] medical causation" because "[t]emporal proximity, combined with the absence of an alternative explanation, is sufficient to raise a reasonable inference that Tygacil is the cause of [the] injuries[.]"). Instead, in the Amended Complaint, Plaintiffs identify conditions for each Plaintiff and attribute those conditions generally to alleged exposure to "toxic and hazardous chemicals[.]" *See, e.g.,* Doc. 16 at 18, ¶ 70. For example, with regard to Plaintiff Alicia Bellafaire, the Amended Complaint alleges she:

> lived at 9 Forbes Terrace, North Tonawanda, NY 14120, for twenty (20) years, from 1977 to 2000, and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring. She regularly spent time in the yard and

ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials. As a child, Mrs. Bellafaire played on the Site property and inhaled and had direct dermal contact with surface soil, standing water and materials at the Site. Mrs. Bellafaire has suffered and continues to suffer from personal injuries consistent with exposure to Defendants' toxic and hazardous chemicals, including, but not limited to: eczema, chronic dry eye, loss of short term memory, difficulty balancing, anxiety, depression, and early menstruation. Ms. Bellafaire also suffered a miscarriage and additionally gave birth to another child at 36 weeks due to preeclampsia. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances into the area surrounding her home, Mrs. Bellafaire has developed significant debilitating personal injuries.

*Id.*

Plaintiff Joshua Clark alleges he:

Lived at 51 Forbes Terrace, North Tonawanda, NY 14120, for five (5) years, from 1982 to 1987, and had substantial exposure to the contamination from the Site for several years, and has personal injuries and property damage and seeks medical monitoring. He regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials. As a child, Mr. Clark played on the Site property and inhaled and had direct dermal contact with surface soil, standing water, and materials at the Site. Mr. Clark has suffered and continues to suffer from personal injuries consistent with exposure to Defendants' toxic and hazardous chemicals, including but not limited to: numbness and tingling in his fingers and feet, and dental issues including multiple cavities and tooth extractions. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances into the area surrounding his home, Mr. Clark has developed significant debilitating personal injuries.

*Id.* at 19, ¶ 71.

Plaintiff Jennifer Flammger alleges she:

lived at 44 Forbes Terrace, North Tonawanda, NY 14120 for six (6) years, from 1995 to 2001, and had substantial exposure to the contamination from the Site for several years, has personal injuries and seeks medical monitoring. She regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials. Mrs. Flammger has suffered and continues to suffer from personal injuries consistent with exposure to Defendants' toxic and hazardous chemicals, including, but not limited to: a pause in her menstrual cycle. As a result of

Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances into the area surrounding her home, Mrs. Flammger has developed significant debilitating personal injuries.

*Id.* at 19-20, ¶ 72.

Without knowing which substance is alleged to be the causation agent, there is no means of determining whether a claim has been stated against a particular Defendant. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 638 (N.D. Ohio 2014) ("[T]he complaint in *Pinares* was devoid of any allegations showing 'a causal relationship between any actions by Defendant and Plaintiffs' claimed damages.' In contrast, plaintiffs' complaint here alleges a direct causal link between Whirlpool's dumping and emitting practices and the childhood cancer spike . . . and the personal injury claims.") (quoting *Pinares v. United Techs. Corp.*, 2011 WL 240522, at *2 (S.D. Fla. Jan. 19, 2011)). Plaintiffs, as the parties most familiar with their medical conditions and injuries, are most likely to have relevant information in their possession, custody, or control regarding causation, however, the Amended Complaint remains vague, generalized, and conclusory. *See Rogers v. Organon USA, Inc.*, 2014 WL 3853451, at *3 (E.D. Cal. Aug. 5, 2014) (dismissing complaint because "plaintiff has not alleged any facts in her complaint regarding . . . how long she took each medication, or why plaintiff believes her alleged symptoms are attributable to her use of each identified medication").

Correspondingly, as Defendants point out, the Amended Complaint does not allege "how, when[,] or where such chemicals entered [Plaintiffs'] properties[.]" (Doc. 23-1 at 7.) Although a high degree of specificity is not required, Plaintiffs' causation theory remains wholly speculative. With regard to allegations that "materials" migrated onto Plaintiffs' properties, the Amended Complaint asserts:

[u]pon information and belief, Plaintiff's property was infiltrated by toxic components of the wastes disposed of[,] by[,] or for Defendants through groundwater seepage, soil vapor intrusion, surface water runoff from the Landfill,

and other means which caused a trespass on Plaintiff's property and an interference with the right to possess and enjoy Plaintiff's real property.

(Doc. 16 at 21, ¶ 74.)

These allegations are identical for each Plaintiff who owns or rents real property near the Site. Although Plaintiffs contend they have "incurred response costs in the form of substantial investigation and sampling costs necessary to determine the nature and extent of the releases, threatened releases, and contamination around the Site[,]" *id.* at 79, ¶ 186, the results of their investigation are not reflected in the Amended Complaint. *See Taylor v. Denka Performance Elastomer LLC*, 332 F. Supp. 3d 1039, 1055 (E.D. La. 2018) (dismissing complaint because plaintiffs "merely recite and intone generic and formulaic conclusions. Another point of deficiency is the absence of any individualized allegations regarding each plaintiff's experience."); *Whirlpool Corp.*, 996 F. Supp. 2d at 639 ("I agree that plaintiffs provided nothing but conclusions to support their property-damages claim. Nowhere does the complaint specify the type of damage to plaintiffs' varied properties or the extent of such damages.").

Because the Amended Complaint fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks omitted), and does not allege "sufficient factual matter . . . to state a claim to relief that is plausible on its face," *Elias*, 872 F.3d at 104, Defendants' motions to dismiss must be GRANTED.

Although dismissal has been granted, the court proceeds to analyze Defendants' challenges to the essential elements of the claims in order to facilitate appellate review and any further amendment.

### C. Whether Plaintiffs Adequately Plead a CERCLA Costs Recovery Claim.

In Count One, Plaintiffs seek to recover response costs under CERCLA. In order to plead a *prima facie* cost-recovery claim under Section 107(a) of CERCLA, a plaintiff must plausibly allege that:

> (1) the defendant is an "owner" or is otherwise liable under 42 U.S.C.
> § 9607(a)(1)-(4); (2) the site is a "facility" as defined by 42 U.S.C.

§ 9601(9); (3) there has been a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or the threat; and (5) the costs and response conform to the National Contingency Plan ["NCP"].

*Price Trucking Corp. v. Norampac Indus., Inc.*, 748 F.3d 75, 80 (2d Cir. 2014). For the purposes of 42 U.S.C. § 9607(a)(4)(B), a plaintiff must further allege that "the costs incurred were 'necessary.'" *Id.* If the plaintiff establishes these elements, "the defendant is strictly liable for the presence of hazardous substances unless it succeeds in invoking one of the statutory defenses set forth in § 107(b) (42 U.S.C. § 9607(b))." *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 603 (2d Cir. 1999) (footnote omitted).

Plaintiffs allege they "have incurred response costs in the form of substantial investigation and sampling costs necessary to determine the nature and extent of the releases, threatened releases, and contamination around the Site" and that their response costs "exceed $80,000 and additional response costs will be incurred by Plaintiffs in the near future." (Doc. 16 at 79, ¶ 186.) They state that their response was "consistent with the [NCP]." *Id.* at 78, ¶ 183. "An award of 'preliminary' investigative costs may be recovered from 'covered persons,' even when there has not been compliance with the NCP and response costs are otherwise not recoverable." *Pierson Sand & Gravel, Inc. v. Pierson Twp.*, 1996 WL 338624, at *6 (6th Cir. June 18, 1996) (citation omitted); *see Hobart Corp. v. Dayton Power & Light Co.*, 2017 WL 3773146, at *7 (S.D. Ohio Aug. 29, 2017) ("Given that DP&L seeks to recover costs of sampling and monitoring, its conclusory allegations of consistency with the NCP are not necessarily fatal to the counterclaim.").

With regard to the fourth element of their prima facie claim, Defendants assert that Plaintiffs do not specify which Plaintiffs incurred the costs of the alleged sampling and investigation. As they point out, Plaintiffs are in possession of this information and could therefore specify which remedial costs were incurred by whom. *See Lozar v. Birds Eye Foods, Inc.*, 678 F. Supp. 2d 589, 608 (W.D. Mich. 2009) (permitting amendment to "set []forth all specific allegations [plaintiffs] wish to assert with regard to the timing, nature, and extent of allegedly-recoverable response/remediation costs which *each particular*

*plaintiff* has already incurred" or to "make[] clear that some of the plaintiffs are not asserting a response/remediation cost-recovery claim"); *Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1475 (D. Colo. 1991) ("Conclusory allegations which merely mirror the terms of the statute are insufficient. The complaint must specify at least one cognizable response cost incurred by each named plaintiff prior to filing the lawsuit."). As Defendants further point out, Plaintiffs do not allege the testing was "necessary to monitor, assess, and evaluate the releases." (Doc. 23-1 at 26.)

As to the fifth element of Plaintiffs' prima facie case, Defendants contend the Amended Complaint provides insufficient detail regarding the nature and timing of the investigation and testing. A statement that a plaintiff has "undertaken some form of remedial action" is "conclusory" because there are "no details from which to infer [] compliance with CERCLA." *Francisco-Sánchez v. Esso Standard Oil de Puerto Rico, Inc.*, 2010 WL 682542, at *4 (D.P.R. Feb. 22, 2010) (dismissing a CERCLA cost-recovery claim for failing to meet the plausibility standard).

At the pleading stage, Plaintiffs' assertion that their sampling and investigation were NCP-compliant is sufficient. Their allegation that they collectively incurred $80,000 in response costs, however, is not. *See Cook*, 755 F. Supp. at 1475 ("The complaint must specify at least one cognizable response cost incurred by each named plaintiff prior to filing the lawsuit."). On this basis, the court would dismiss Count One for failure to allege the essential elements of a § 107(a) CERCLA response costs recovery claim.

### D. Whether Plaintiffs Adequately Plead a CERCLA Contribution Claim.

In Count Two, Plaintiffs seek contribution from Defendants for their response costs. Section 113(f) of CERCLA provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [CERCLA § 107], during or following any civil action under [§ 106] or under [§ 107]." 42 U.S.C. § 9613(f)(1). Because Plaintiffs fail to plausibly allege a cost-recovery claim and the existence of a prior civil enforcement action, their contribution claim must also fail. *See Cooper Indus.,*

12

*Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 160-61 (2004) ("The issue we must decide is whether a private party who has not been sued under § 106 or § 107(a) may nevertheless obtain contribution under § 113(f)(1) from other liable parties. We hold that it may not."); *Prisco*, 168 F.3d at 603 ("The elements of an action under § 113(f)(1) are the same as those under § 107(a).") (internal quotation marks omitted); *MPM Silicones, LLC v. Union Carbide Corp.*, 931 F. Supp. 2d 387, 396 (N.D.N.Y. 2013) (dismissing a CERCLA contribution claim because "[t]he Complaint fails to allege that Plaintiff currently is or previously has been subject to an action under § 106 or § 107(a) or that Plaintiff has settled its CERCLA liability.") (footnote omitted).

**E.      Whether Plaintiffs are Entitled to Seek Declaratory Relief.**

Plaintiffs assert they are entitled to declaratory relief under CERCLA in Count Three of their Amended Complaint and request that the court enter a determination that "Defendants are liable under CERCLA §§ 107(a) and 113(f), 42 U.S.C. §§ 9607(a) and 9613(f), for past, present, and future costs of assessment, containment, response, removal, and remediation arising from the presence of hazardous substances, at the Site." (Doc. 16 at 80, ¶ 194.)

Section 113(g)(2) of CERCLA provides that, "[i]n any such action described in this subsection[, such as an action to recover response costs], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2). Plaintiffs would be entitled to declaratory relief under CERCLA if they succeeded on their cost-recovery claims, or any other action brought pursuant to 42 U.S.C. § 9613. However, the Declaratory Judgment Act ("DJA") is "procedural in nature, and merely offers an *additional remedy* to litigants." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997). Accordingly, "[t]he DJA provides a remedy, not a cause of action." *Springfield Hosp. v. Hofmann*, 2011 WL 3421528, at *2 (D. Vt. Aug. 4, 2011), *aff'd*, 488 F. App'x 534 (2d Cir. 2012). Because Plaintiffs have failed to allege a claim for relief under Section 107, or any CERCLA provision, their request for declaratory relief also fails. *See White Plains Hous. Auth. v.*

*Getty Props. Corp.*, 2014 WL 7183991, at *10 (S.D.N.Y. Dec. 16, 2014) ("That exclusion bars the cost recovery claim. The declaratory relief claim fails in turn. Those two claims are dismissed.").

F.    **Whether Plaintiffs Adequately Plead Their Trespass Claims.**

In Count Eight of the Amended Complaint, Plaintiffs allege that Defendants' "negligent, willful, and/or wanton actions and/or intentional failures to act caused an uncontrolled quantity of [c]ontaminants to be spilled, disposed of, or otherwise released into the ground, soil, groundwater, and aquifer at the Site[,]" which contaminants then "entered and trespassed upon the land and realty of the Plaintiffs, thus interfering with the condition of Plaintiffs' properties and the neighboring properties, causing an injury to their possession and/or right of possession." (Doc. 16 at 92, ¶¶ 264-65.)

"To prevail on a trespass claim under New York law, a plaintiff must show an interference with its right to possession of real property either by an unlawful act or a lawful act performed in an unlawful manner." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 119 (2d Cir. 2013) (internal quotation marks and alteration omitted). While the alleged trespasser,

> need not intend or expect the damaging consequence of his intrusion, he
> must intend the act which amounts to or produces the unlawful invasion,
> and the intrusion must at least be the immediate or inevitable consequence
> of what he willfully does, or what he does so negligently as to amount to
> willfulness.

*Id.* (quoting *Phillips v. Sun Oil Co.*, 121 N.E.2d 249, 251 (N.Y. 1954)) (internal quotation marks and alteration omitted). If the trespass involves the "underground movement of noxious fluids," a plaintiff must further allege that the defendant "had good reason to know or expect that subterranean and other conditions were such that there would be passage of the pollutant from defendant's to plaintiff's land." *Id.* (quoting *Phillips*, 121 N.E.2d at 251) (internal quotation marks and alteration omitted).

In Count Eight of the Amended Complaint, Plaintiffs fail to allege which chemicals intruded upon their properties or how or when the alleged intrusion occurred. *See City of Albany v. Normanskill Creek, LLC*, 86 N.Y.S.3d 635, 637 (N.Y. App. Div.

14

2018) ("[A] trespass claim represents an injury to the right of possession, and the elements of a trespass cause of action are an intentional entry onto the land of another, without permission."). Because some Plaintiffs acquired their property recently, without alleging a timeframe when the alleged trespasses occurred, the nature of the trespasses, and the damages they inflicted, the Amended Complaint fails to provide adequate notice of the claims against Defendants. *See* Fed. R. Civ. P. 12(b)(6). In effect, Plaintiffs allege that an unspecified Defendant deposited or caused to be deposited an unspecified substance on, in, or underneath Plaintiffs' properties at an unspecified time which caused unspecified damage. Plaintiffs make no distinction between migration methods; allege conflicting and conclusory paths of migration; allege that Plaintiffs, as opposed to Defendants, may have inadvertently brought some of the hazardous substances from the Site to their own properties through their own apparent trespass; and fail to plausibly allege that Defendants intentionally caused the entry of foreign matter onto their properties. *See Phillips*, 121 N.E.2d at 250-51 ("Trespass is an intentional harm . . . the act done must be such as will to a substantial certainty result in the entry of the foreign matter[.]") (internal quotation marks omitted).

Conclusory allegations in support of an intentional tort claim will not suffice. *See Taylor*, 332 F. Supp. 3d at 1056 (dismissing claim where "plaintiffs fail to offer any legal support or factual allegations indicating that they might plausibly recover on a trespass theory"); *see also Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) ("Conclusory allegations or legal conclusions . . . will not suffice to [defeat] a motion to dismiss.") (internal quotation marks omitted). As a result, Plaintiffs fail to state the essential elements of a trespass claim. *See* Fed. R. Civ. P. 12(b)(6).

G.      **Whether Plaintiffs Adequately Plead Their Claims Against the Town.**

In Counts Four and Five, Plaintiffs assert claims under 42 U.S.C. § 1983 against the Town alleging that the Site violates their rights to substantive due process because it is a state-created danger that interferes with their bodily integrity. The Town responds that, as with their other claims, Plaintiffs have failed to adequately plead their injuries and a theory of causation that those injuries were caused by the Town's conduct. The Town

15

also contends that Plaintiffs' factual allegations are insufficient to plead the requisite pattern or practice for a claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), because the allegations that "certain conditions at the [Site] during an approximately four year period in the 1960s do not, without more, satisfy the requirements of *Monell*." (Doc. 21-1 at 21.)

Under *Monell*, "a municipality can be held liable under [42 U.S.C. § 1983] if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "A plaintiff may satisfy the 'policy, custom or practice' requirement [of a *Monell* claim] in one of four ways[,]" *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276 (S.D.N.Y. 2010), by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 538-39 (S.D.N.Y. 2015). "In addition, a plaintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury." *Vasquez v. Vill. of Haverstraw*, 2017 WL 4296791, at *5 (S.D.N.Y. Sept. 26, 2017) (citing *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008)).

"[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). "[I]solated acts . . . by non-policymaking municipal employees are generally not

sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones*, 691 F.3d at 81.

"[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown*, 520 U.S. at 407. "To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Jones*, 691 F.3d at 81. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (internal quotation marks omitted).

In its ruling on the prior motions to dismiss, the court noted that the Town allegedly arranged to have corporations and individuals deposit hazardous industrial waste at the Site which created and perpetuated Plaintiffs' exposure to hazardous waste, which plausibly alleges the Town's affirmative action. However, the court further found that Plaintiffs did not allege that the Town knew Plaintiffs and others were using the Site for recreational purposes and either encouraged that use or were deliberately indifferent to the risks that use created. Without such allegations, Plaintiffs failed to allege the "stringent standard of fault" that "a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Id.*

In the Amended Complaint, Plaintiffs allege the Town was aware of the risks to persons and property posed by the Site, deliberately ignored this risk, took steps to conceal it, was aware that the Site had the capacity to contaminate neighboring properties, was aware that the Site was being used for recreational purposes, and nonetheless failed to heed directives to notify neighbors and residents of the Site's dangers. Although Plaintiffs have failed to allege causation and their claims fail for that

17

reason, these allegations are sufficient at the pleading stage to assert a claim of "deliberate indifference" under *Monell*.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motions to dismiss. (Docs. 21, 23, 25.) Because Plaintiffs have already been granted leave to amend, the court does not grant leave to amend sua sponte. Plaintiffs have twenty days (20) from the date of this Order to petition for leave to amend. In doing so, they must explain why their proposed amendments are not futile.

SO ORDERED.

Dated at Burlington, Vermont this 5th day of August, 2019.

Christina Reiss, District Judge
United States District Court